UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HUMBERTO RIVERA, JR.,                      :
               Plaintiff,               :
                                               :
    v.                                    :       **OPINION AND ORDER**
                                               :
TOWN OF NEW FAIRFIELD, DAVID              :       22 CV 1874 (VB)
KOONITSKY, JAMIE OLSOWY, DAVID            :
THARAS, and JAMES KING,                   :
               Defendants.              :
------------------------------------------------------------x
HUMBERTO RIVERA, JR.,                      :
               Plaintiff,               :
                                               :
    v.                                    :       22 CV 1877 (VB)
                                               :
DEPUTY SHERIFF THOMAS VARBERO,            :
               Defendant.               :
------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Humberto Rivera, Jr., brings these related actions against defendants Town of

New Fairfield (the "Town"), Trooper David Koonitsky (collectively, the "New Fairfield

Defendants"), Trooper James King, Trooper Jamie Olsowy, and Trooper David Tharas

(collectively, the "Connecticut State Trooper Defendants"), and Deputy Sheriff Thomas Varbero.

Plaintiff alleges defendants violated his Fourth Amendment rights when they entered and

detained him in his home in response to a domestic violence call involving his young daughter.[1]

Plaintiff also brings state law claims for trespass and false imprisonment against the Town.

---

[1]    Plaintiff has voluntarily dismissed his Fourteenth Amendment substantive and procedural due process claims against all defendants. (See Docs. ##154 at 2 n.1; 149 at 2 n.1; 73 at 2 n.1, 22cv1877). Plaintiff has also voluntarily dismissed his negligence claim against the Town. (See Doc. #154 at 2 n.1).

      Citations to the record are to case no. 22cv1874, unless otherwise noted.

Now pending are defendants' motions for summary judgment.  (Docs. ##134, 142; Doc. #63, 22cv1877).

For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.  All claims are dismissed except for plaintiff's Fourth Amendment seizure claim against Deputy Varbero.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits.  These submissions reflect the following factual background.

I.    The 911 Call

On March 2, 2019, plaintiff was at home in Brewster, New York, with his eight-year-old daughter, SR.  Plaintiff's fiancée, Jennika Suero, and their infant son were also at home.  Plaintiff and SR's mother, Wendy Cotte, are separated, and Cotte lives in Manhattan.  That weekend, plaintiff had visitation rights with SR and had picked her up at school in Manhattan the previous day.

At around 8:00 p.m., SR called Cotte.  SR told Cotte she was afraid because plaintiff had been drinking and that she was currently hiding in the bathroom.  (Doc. #152 ¶¶ 4, 14).  SR told Cotte plaintiff had said that "they need to put your mother in a place," and that doing so would mean SR would live with plaintiff permanently.  (Id. ¶ 16).  SR told Cotte she was "really scared" and wanted to leave, and asked Cotte to pick her up.  (Id. ¶¶ 14–15).  SR called Cotte two more times after her initial call and Cotte recorded one of the calls.  (Id. ¶ 2).  Cotte asked a friend to drive her from Manhattan to Brewster and arrived around 11:00 p.m.

Upon their arrival, Cotte and her friend parked several houses down from plaintiff's home and Cotte called 911.  Cotte told the 911 dispatcher that her daughter had texted and called to say she felt scared and unsafe with her intoxicated father and had asked Cotte to pick her up. (Doc. #152 ¶ 22).  Cotte also told the dispatcher that she and plaintiff had a history of domestic violence and she was afraid to knock on plaintiff's door for fear of how plaintiff would react. (Id. ¶ 23).  Cotte asked for assistance to check on SR and determine whether she could take her daughter home.

Plaintiff's home is located near the border between New York and Connecticut.  Although plaintiff's home is in Brewster, New York, the home is accessible via roads in New Fairfield, Connecticut.  In plaintiff's neighborhood, homes on one side of the street are located in New York and those on the other side are in Connecticut.  (Doc. #157 ¶¶ 1–3).  When Cotte called 911, the 911 call was picked up by the closest cell tower, which was in Connecticut, and was answered by the Town of New Fairfield dispatch.  (Doc. #152 ¶¶ 28–30).  The Town of New Fairfield is a "resident trooper town," meaning the town has its own police department but also receives support and supervision from the Connecticut State Police.  (Id. ¶ 31).  Therefore, although New Fairfield receives 911 calls due to its location, the Connecticut State Police also listens in on dispatch calls.  (Id.).

As a result, while in his patrol vehicle, Trooper Tharas received a call from New Fairfield dispatch reporting a potential domestic violence situation where a father was allegedly preventing his daughter from leaving the residence.  (Doc. #152 ¶ 35).  The dispatcher informed

Tharas that the 911 call had been made by the child's mother and that young children were involved.  (Doc. #141-5 at 30).

II.    The Connecticut State Trooper Defendants Arrive on the Scene

At approximately 11:14 p.m., Tharas and his partner Trooper Olsowy arrived at plaintiff's home.  (Doc. #152 ¶ 43).  Cotte met with Tharas and Olsowy, showed them the text messages SR sent her, and played the recording of one of her calls with SR.  Cotte also told Tharas and Olsowy that SR was locked inside the house and was not being permitted to leave.  (Id. ¶¶ 46–48).  While Olsowy continued talking to Cotte, Tharas approached the front door of plaintiff's house.  According to Tharas and Cotte, Tharas knocked on the door and SR opened it.  (Id. ¶¶ 50–51).  However, plaintiff disputes that SR opened the door because he contends the door was too heavy for an eight-year-old child to open.  Moreover, plaintiff contends he had never previously seen SR open the front door.  (Id. ¶ 51).

Tharas then entered the home through the front door.  Tharas asked SR where plaintiff was, and she responded he was in her bedroom sleeping.  Olsowy entered soon afterwards.  (Doc. #152 ¶¶ 52, 55).

Tharas and Olsowy proceeded to SR's bedroom, opened the door, and found plaintiff sleeping on a futon on the floor.  Olsowy called out to wake plaintiff, causing plaintiff to fall off the futon.  (Docs. ##141-5 at 35; 153 ¶ 15).  Tharas determined plaintiff was intoxicated due to his demeanor and the odor of alcohol in the room.  (Doc. #152 ¶ 58).

Olsowy then asked plaintiff for his identification and Tharas continued speaking with SR.  SR told Tharas her father had been sleeping on the futon and had not been keeping her in the house against her will.  After speaking with SR, Tharas determined the situation was not as

reported and the Troopers concluded it was not an active domestic violence situation.  (Doc. #152 ¶¶ 60–61).

When Olsowy reviewed plaintiff's identification, he realized plaintiff's home was located in New York, not Connecticut.  Although Tharas then requested dispatch to confirm the address, which they asserted was a Connecticut address, plaintiff told the officers his home was located in New York.  (Doc. #152 ¶¶ 63–64).  As a result, at around 11:20 p.m., Tharas called dispatch to inform them to contact the New York state police.  (Id. ¶ 66).

While waiting for the New York authorities to arrive, Tharas and Olsowy sat with plaintiff in the living room and engaged in small talk.  (Doc. #152 ¶ 69).  According to plaintiff, he asked Troopers Olsowy and Tharas to leave his property.  (Id. ¶ 71).  At some point, Trooper King arrived on the scene and remained outside with Cotte.  (Id. ¶ 52).

III.    The New Fairfield Defendants Arrive on the Scene

Sometime after 11:20 p.m., Officer Koonitsky from the New Fairfield Police Department arrived on the scene and entered through the open front door, which at that point was being monitored by Trooper King.  (Doc. #157 ¶¶ 31–34).  Koonitsky joined Olsowy and Tharas and continued to engage in small talk with plaintiff while waiting for the New York authorities to arrive.

According to plaintiff, Koonitsky did not touch or otherwise instruct plaintiff to remain in place, did not enter any other rooms besides the living room, and did not conduct any searches. (Doc. #141-3 at 101–02).

IV.    <u>Defendant Varbero Arrives on the Scene</u>

At approximately 11:43 p.m., Putnam County Deputy Sheriff Varbero arrived in response to the Connecticut dispatch request.  Upon Varbero's arrival, he became the officer in control of the scene.  (Doc. #157 ¶ 37).

Varbero spoke first with SR and Cotte, who were outside plaintiff's home.  SR told Varbero that plaintiff had been drinking, that he had taken away her medication, and that she felt unsafe with him.  (Doc. #76 ¶¶ 112–13, 22cv1877).  Cotte also told Varbero she feared for SR's safety because of plaintiff's history of domestic violence.  (<u>Id</u>. ¶ 115).

Deputy Varbero then approached the house.  One of the Connecticut State Troopers opened the front door and let Varbero in.  (Doc. #76 ¶ 117, 22cv1877).  Once inside, Varbero met with the Troopers.  (Doc. #64-8 at 27).  Tharas spoke to Varbero and explained that, in his assessment, the situation was not a domestic violence incident but rather a custody dispute.  (Doc. #141-5 at 37–38).  The Connecticut State Troopers also told Varbero there were other people inside the house and pointed to the master bedroom.  (Doc. #76 ¶ 118, 22cv1877).  Varbero spoke to plaintiff in the living room and then proceeded to the master bedroom.  He opened the door to the master bedroom, spoke briefly with Suero, and then returned to the living room where plaintiff and the other officers were waiting.  (<u>Id</u>. ¶¶ 119–22).

After returning to the living room and kitchen area, Varbero told plaintiff that SR felt unsafe and would be leaving with Cotte.  Varbero then advised plaintiff that he and Cotte should pursue any further remedies in family court.  (Doc. #76 ¶¶ 125–28, 22cv1877).

According to plaintiff, Varbero also told him that if he "wasn't quiet," he would "end up in the hospital."  (Doc. #77 ¶ 32, 22cv1877).  Varbero disputes making this comment.  (Doc. #75-6 at 55, 22cv1877).

In total, Varbero was inside plaintiff's home for five to seven minutes and on-site for less than an hour.  (Docs. ##76 ¶¶ 131–32, 22cv1877; 64-8 at 27, 22cv1877).  Tharas, Olsowy, King, and Koonitsky left the scene shortly after Varbero's arrival.  The Connecticut State Troopers did not prepare a report related to the incident and classified it as an "assist" to a different law enforcement agency.  (Doc. #141-5 at 38).

**DISCUSSION**

I.    <u>Standard of Review</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.    Fourth Amendment Claims

A.    Legal Standard

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits "unreasonable searches" by law enforcement.  U.S. Const. amend. IV. Under the Fourth Amendment, warrantless searches and seizures inside a home are "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980).

However, "[t]he Fourth Amendment does not require law enforcement to obtain a warrant to search a home if exigent circumstances exist, including the need to assist persons who are seriously injured or are threatened with imminent injury."  United States v. Laurent, 33 F.4th 63, 95 (2d Cir. 2022), cert. denied, Laurent v. United States, 143 S. Ct. 394 (2022).  To determine whether exigent circumstances existed, "the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action."  United States v. Laurent, 33 F.4th 63, 95 (2d Cir. 2022).  One such exigency is the "emergency aid doctrine," which applies when "law enforcement agents were confronted by an urgent need to render aid" inside a home.  United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc).

8

The Second Circuit has identified six non-exhaustive factors for courts to consider in determining whether the emergency-aid exception to the warrant requirement applies:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause. . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

United States v. MacDonald, 916 F.2d at 769–70.  As for domestic disputes, courts have recognized that the "combustible nature" of such disputes requires "great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger."  Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998).

Moreover, the Fourth Amendment prohibits "unreasonable . . . seizures."  U.S. Const. amend. IV.  "[T]he first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure."  Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998). A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in which a reasonable person would believe he or she is not "free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).

B.    The Connecticut State Trooper Defendants

The Connecticut State Trooper defendants contend the emergency aid exception to the Fourth Amendment applies and that, alternatively, they are entitled to qualified immunity.

1.    Entry

The emergency aid exception to the Fourth Amendment applies if law enforcement officers are confronted with the urgent need to render aid inside a home.  Whether such an urgent

need exists turns on whether the facts, "as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action." Chamberlain ex rel. Chamberlain v. City of White Plains, 960 F.3d 100, 106 (2d Cir. 2020).

Here, several factors weigh in favor of finding that the emergency aid exception applies. The Connecticut State Trooper defendants were dispatched in response to a 911 call requesting help for a potential domestic violence situation involving children. In response to SR's messages saying she was afraid of her father and that he had been drinking, and her pleas that her mother pick her up, Cotte, who did not own a car, asked a friend to drive her for two hours at night so she could pick up her child. When the Connecticut State Troopers arrived, Cotte told them she and plaintiff had a history of domestic violence and that SR was not being allowed to leave the house. Cotte expressed fear that plaintiff would react violently if she knocked on the door and tried to collect SR herself. A reasonable jury could find that, under these circumstances, the Connecticut State Trooper defendants were facing a potentially volatile domestic violence situation involving children and were justified in entering plaintiff's home to prevent imminent violence.

However, several other factors weigh against finding the emergency aid exception applies. The MacDonald factors are particularly instructive. When the Connecticut State Troopers arrived on the scene, there was: no evidence or allegation that plaintiff had a weapon; no likelihood that plaintiff would escape; no history of domestic violence involving SR, or other children, only Cotte; and no evidence of violence when the officers arrived to the home, such as screaming or broken glass. Therefore, construing the facts in plaintiff's favor, a reasonable jury

could find the Connecticut State Trooper defendants did not need to enter plaintiff's home to prevent an emergency.

Yet the Connecticut State Trooper defendants are nevertheless entitled to qualified immunity because plaintiff's rights were not clearly established and because it was objectively reasonable for defendants to believe their conduct was lawful. Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "Rights must be clearly established in a particularized sense, rather than at a high level of generality; and such rights are only clearly established if a court can identify a case where an officer acting under similar circumstances was held to have acted unconstitutionally." Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017).

The Supreme Court has cautioned that the appropriate inquiry of "whether the violative nature of the particular conduct is clearly established" should be "undertaken in light of the specific context of the case, not as broad general proposition." Mullenix v. Luna, 577 U.S. 7, 12 (2015). Therefore, although warrantless searches without probable cause or exigent circumstances violate the Fourth Amendment, a right is "clearly established" only if it is "clearly established that the circumstances with which [an officer] was confronted did not constitute

probable cause and exigent circumstances." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640–41
(1987).

 Here, the Court cannot find—and plaintiff has not provided—a case that would have put
the Troopers on notice that their actions, under these specific circumstances involving a potential
domestic violence dispute, violated plaintiff's constitutional rights.  <u>See</u> <u>Grice v. McVeigh</u>, 873
F.3d at 166.  Indeed, the Second Circuit has instructed that, given the "combustible nature of
domestic disputes," courts should apply "great latitude to an officer's belief that warrantless
entry was justified by exigent circumstances when the officer had substantial reason to believe
that one of the parties to the dispute was in danger." <u>Tierney v. Davidson</u>, 133 F.3d at 197.  In
this situation, the Connecticut State Trooper defendants were responding to a 911 call reporting a
potential domestic violence situation involving an allegedly intoxicated father and a frightened
child.  Given Cotte's statements about plaintiff's prior history of domestic violence and
drunkenness, SR's text messages and calls to Cotte, and the lack of conclusive evidence that SR
was not in immediate danger, the Connecticut State Trooper defendants could have believed that
their actions were lawful given the situation.  Therefore, plaintiff's constitutional rights, under
these particular circumstances, were not clearly established.

 Furthermore, even assuming plaintiff's rights in this situation were clearly established—
and they were not—the Connecticut State Trooper defendants are entitled to qualified immunity
because it was objectively reasonable for them to believe their conduct was lawful.  An officer's
conduct is objectively reasonable when officers of "reasonable competence" could disagree as to
its legality.  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  Here, despite the exigencies identified
by the defendants—namely, the potential domestic violence situation, SR's statements that she
was afraid of her father, and Cotte's statements that she was afraid to knock on plaintiff's door

due to their history of domestic violence—a different, equally competent officer could conclude that these circumstances did not justify a warrantless entry. Accordingly, because reasonable officers could disagree amongst each other as to whether the potential risk of violence justified their entry into plaintiff's home, the Connecticut State Trooper defendants' conduct was objectively reasonable.

"The qualified immunity standard is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017). It cannot be said that the Connecticut State Trooper defendants here were "plainly incompetent" when they entered plaintiff's home to prevent a potentially volatile domestic violence situation involving young children. Mullenix v. Luna, 577 U.S. 7, 12 (2015).

Accordingly, the Connecticut State Trooper defendants are entitled to qualified immunity on plaintiff's Fourth Amendment entry claim.

### 2.    Seizure

As to plaintiff's seizure claim, the Connecticut State Trooper defendants argue their brief detainment of plaintiff during their investigation does not amount to a seizure.

The Court agrees.

The Constitution "forbids not all searches and seizures, but unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 9 (1968). A seizure does not occur "simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. at 19 n.16. Courts routinely consider several factors to determine whether a seizure has occurred, including the "threatening presence of several officers; the

display of a weapon; physical touching of the person by the officer; [and] language or tone indicating that compliance with the officer was compulsory." Dejesus v. Vil. of Pelham Manor, 282 F. Supp. 2d 162, 168 (S.D.N.Y. 2003).

Plaintiff points to several actions taken by the Connecticut State Troopers during their investigation to argue that he was detained, but each is without merit. First, plaintiff argues the Connecticut State Trooper defendants "woke him up" with "forceful yelling," but fails to articulate how this act of waking up plaintiff amounts to a seizure or otherwise restrained plaintiff's liberty. (Doc. #149 at 9.) He does not contend, moreover, that the officers' attempts to wake him up was in any way an "indicat[ion] that compliance with the officer's request might be compelled," United States v. Mendenhall, 446 U.S. 544, 554 (1980), rather than just an attempt to awaken plaintiff. Plaintiff also contends he was threatened with violence if he did not comply with the officers' demands, but he points to a statement that defendant Varbero, not the Connecticut State Trooper defendants, purportedly made to him. (Doc. #149 at 9.) Lastly, plaintiff alleges the Connecticut State Trooper defendants "touched him" while he was in the process of providing them with his identification, but "inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." United States v. Mendenhall, 446 U.S. at 555.

Accordingly, the Connecticut State Trooper defendants are entitled to summary judgment on plaintiff's seizure claim.

C.    The New Fairfield Defendants

As for Officer Koonitsky, plaintiff contends Koonitsky violated his Fourth Amendment rights when he entered the home without a warrant and joined the Connecticut State Troopers' seizure of him in the living room.

14

The Court disagrees.

"A law enforcement officer without personal knowledge of the facts is permitted to take action based on the representations of another officer, if it is reasonable to believe that the other officer is telling the truth." Lederman v. Adams, 45 F. Supp. 2d 259, 271 (S.D.N.Y. 1999). Here, Officer Koonitsky had been given a brief description of Cotte's 911 call by the Town of New Fairfield dispatcher and was responding to a scene to which other officers had already been dispatched. Upon seeing the open door to plaintiff's home, and given the potential domestic violence situation to which he was responding, it was reasonable for Koonitsky to rely on the determinations of the Connecticut State Troopers and enter the home.

Moreover, "the direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). Although Officer Koonitsky joined the Connecticut State Troopers as they were interviewing plaintiff in the living room, his mere presence is not enough to impute liability when he reasonably relied on the Trooper defendants' decision to enter the home. "[S]uch innocent participation" in the alleged constitutional violation "cannot make him liable for its illegality." Id. Rather, direct participation is only a basis of liability if the participant "has knowledge of the facts that rendered the conduct illegal." Id.

Finally, plaintiff does not allege Officer Koonitsky touched or otherwise exhibited any force towards plaintiff. Instead, the entirety of plaintiff's Fourth Amendment claim against Koonitsky rests on his mere presence on the scene while the Connecticut State Troopers were interviewing plaintiff. This is insufficient, as a matter of law, to constitute a seizure in violation of the Fourth Amendment.

Accordingly, Officer Koonitsky is entitled to summary judgment on plaintiff's Fourth Amendment claim.

D.    <u>Defendant Varbero</u>

As for Deputy Varbero, plaintiff argues there are genuine issues of material fact that make summary judgment improper as to whether Varbero violated plaintiff's Fourth Amendment rights when Varbero entered the home, conducted a search of the master bedroom, and threatened plaintiff during his investigation.

The Court disagrees as to plaintiff's entry and search claim but agrees as to plaintiff's seizure claim.

1.    <u>Entry</u>

As with Officer Koonitsky, Deputy Varbero was "entitled to rely" on the other officers' determination of legality of the entry, "[a]bsent significant indications to the contrary." <u>Loria v. Gorman</u>, 306 F.3d 1271, 1288 (2d Cir. 2002). Upon his arrival to the scene, Varbero entered through the front door, which was held open by one of the Connecticut officers. Plaintiff does not allege that Varbero was aware that a lack of consent existed for his entry. Moreover, the Connecticut State Trooper defendants told Varbero that they observed no domestic disturbance only after he was already in the house. Therefore, the manner in which the Connecticut State Troopers entered plaintiff's home is not material or germane to Varbero's "awareness or notice of the facts that rendered the action illegal." <u>Provost v. City of Newburgh</u>, 262 F.3d at 155. Accordingly, even if the Connecticut State Troopers' entry was unlawful, plaintiff has failed to proffer evidence that Varbero was aware of this illegality, and thus there is "no basis for holding the defendant liable." <u>Id</u>.

In short, like Officer Koonitsky, Deputy Varbero is entitled to summary judgment on plaintiff's Fourth Amendment claim relating to Varbero's entry into the home.

        2.     <u>Search</u>

Plaintiff further contends Deputy Varbero conducted an unconstitutional search when he opened the door to the master bedroom during his investigation. Specifically, plaintiff argues that the presence of the Connecticut State Troopers and Officer Koonitsky, and the removal of SR from the home, ameliorated any need for a "protective sweep" of the home.

An officer is permitted to conduct a limited search of a home when the officer has a reasonable suspicion that the "area to be swept harbors an individual posing a danger to those on the arrest scene." <u>Maryland v. Buie</u>, 494 U.S. 325, 334 (1990). "A <u>Buie</u> protective sweep is a quick and limited search of premises that is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." <u>United States v. Gandia</u>, 424 F.3d 255, 261 (2d Cir. 2005). However, courts are split on the issue of when a <u>Buie</u> sweep is permitted. Some circuits have cabined <u>Buie</u> to lawful process, like a warrant, but others extend <u>Buie</u> to other types of lawful entry, like exigency or consent. Here, the original entry by the Connecticut officers was either via exigency or consent, and the Second Circuit has not yet decided if <u>Buie</u> extends to entries by either exigency or consent. <u>See United States v. Hassock</u>, 631 F.3d 79, 87 (2d Cir. 2011).

Plaintiff argues there are factual disputes as to whether Deputy Varbero had reasonable suspicion to search plaintiff's home. Plaintiff points out that the Connecticut officers informed Varbero that, in their determination, the situation did not involve a live domestic violence issue

but rather a custody dispute, and plaintiff avers this determination negates any reasonable suspicion Deputy Varbero may have had prior to entering the home.

Yet even assuming Deputy Varbero conducted a <u>Buie</u> sweep without reasonable suspicion, he is nevertheless entitled to qualified immunity because his conduct was objectively reasonable. Here, Varbero arrived late to the scene and was let inside the home by the Connecticut officers. Varbero's brief search of the master bedroom, where he only touched the doorknob and spoke briefly to plaintiff's fiancée, Ms. Suero, was, at the very least, one where reasonable officers could disagree as to the legality. Plaintiff points to no established case detailing the limits of reliance a responding officer may have when taking control of an incident from an out-of-jurisdiction agency. Moreover, the Second Circuit has long afforded "great latitude" to an officer responding to domestic disputes due to their "combustible nature." <u>Tierney v. Davidson</u>, 133 F.3d at 197. Because Varbero's responsibilities and the limits of the <u>Buie</u> sweep were not clearly established, he is entitled to qualified immunity for the search of the master bedroom.

Accordingly, plaintiff's Fourth Amendment claim arising from Deputy Varbero's search of his home must be dismissed.

>    3.    <u>Seizure</u>

As for plaintiff's seizure claim, plaintiff argues there is a genuine issue of material fact as to whether Deputy Varbero seized plaintiff.

The Court agrees.

A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in which a reasonable person would believe he or she is not "free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). For a plaintiff to allege a cognizable

seizure, the plaintiff must allege the officer intended to restrain that individual. <u>Medeiros v. O'Connell</u>, 150 F.3d 164, 168 (2d Cir. 1998).

If there is a seizure, the Court must next determine what type of seizure occurred. There are two relevant types of seizures, each of which requires a different level of justification: (i) an investigatory (or <u>Terry</u>) stop, which must be based on "a reasonable suspicion supported by articulable facts that criminal activity may be afoot"; and (ii) an arrest, which must be based on probable cause. <u>United States v. Glover</u>, 957 F.2d 1004, 1008 (2d Cir. 1992) (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)).

Here, plaintiff contends that, while Deputy Varbero was questioning him in the living room, he told plaintiff that, "if [plaintiff wasn't] quiet," he would "end up in the hospital." (Doc. #77 ¶ 32, 22cv1877). A reasonable person in plaintiff's circumstances could have considered Varbero's language and tone to indicate he was not "free to leave." <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 340 (2d Cir. 2000). Therefore, drawing all inferences in plaintiff's favor, a reasonable jury could find plaintiff was seized by Deputy Varbero.

Having concluded that plaintiff was seized, the Court must next consider whether the seizure was an investigatory <u>Terry</u> stop or an arrest.[3] "Whether a seizure is an arrest or . . . merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances." <u>Posr v. Doherty</u>, 944 F.2d 91, 98 (2d Cir. 1991). "As the level of intrusiveness rises, . . . an encounter between the police and a citizen is more properly categorized as an arrest." <u>Id</u>. Although plaintiff does not allege he was detained by Deputy

---

[3]     The Court previously held, in denying Deputy Varbero's motion to dismiss (Doc. #30, 22cv1877), that plaintiff had sufficiently alleged that Varbero conducted a <u>Terry</u> stop when Varbero prevented plaintiff from exiting his home. At the summary judgment stage, plaintiff has waived this argument and only alleges he was seized when Deputy Varbero questioned and allegedly threatened him.

Varbero for a specific amount of time, the extent of his detention could not have exceeded the length of Varbero's investigation inside the home, which amounted to five to seven minutes. Moreover, plaintiff was held in his living room for the entirety of the alleged seizure, and he does not allege Varbero handcuffed him or brandished a weapon. These factors demonstrate that Varbero's seizure involved a low level of intrusion, and weigh against the finding of a de facto arrest. Therefore, Varbero's detention of plaintiff constituted a Terry stop requiring reasonable suspicion.

Deputy Varbero nevertheless contends he is entitled to qualified immunity because it was objectively reasonable for him to believe that reasonable suspicion existed to justify a Terry stop. The Court is not persuaded.

A determination of reasonable suspicion depends on the totality of circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." United States v. Padilla, 548 F.3d 179, 187 (2008). Here, a reasonable jury could find Deputy Varbero's seizure of plaintiff was not based on reasonable suspicion. Varbero made his alleged threat to plaintiff inside the home after he had spoken with the Connecticut State Trooper officers, who had informed him the situation did not involve a live domestic violence issue but rather a custody dispute. Moreover, prior to his entry into the home, Varbero spoke with Cotte and SR outside, further supporting the Connecticut State Troopers' determination that the initial potential incident, that of a domestic violence situation involving a minor child, was no longer active. Therefore, a reasonable jury could conclude Varbero did not possess the requisite reasonable suspicion to detain plaintiff and threaten him to comply.

Admittedly, the evidence supporting plaintiff's claim is extremely thin. Plaintiff only points to this one remark as evidence that Deputy Varbero's brief detention of him was unlawful.

Plaintiff does not contend Varbero touched him, exhibited force, displayed weapons, blocked plaintiff's ability to walk away, or otherwise indicated to plaintiff that he was not free to leave. Yet a reasonable jury could still conclude that Deputy Varbero's alleged threat made plaintiff believe he was not "free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Therefore, construing the facts and drawing all reasonable inferences in plaintiff's favor, there is a genuine issue of material fact as to whether plaintiff was unlawfully seized under the Fourth Amendment.

Accordingly, plaintiff's Fourth Amendment claims against Deputy Varbero as to his entry and search of the home must be dismissed, but plaintiff's claim relating to Varbero's allegedly unconstitutional seizure may proceed.

III.    State Law Claims

Pursuant to 28 U.S.C. § 1367(c), having dismissed the federal claims in case no. 22cv1874 over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claim for trespass and false imprisonment against the Town. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.").

**CONCLUSION**

The motions for summary judgment are GRANTED IN PART and DENIED IN PART. Plaintiff's Fourth Amendment claim against Deputy Sherriff Thomas Varbero arising from his alleged seizure of plaintiff may proceed. All other claims are dismissed.

The Court will conduct a case management conference in case no. 22cv1877 on October 14, 2025, at 3:30 p.m., to be held in person at the White Plains courthouse, Courtroom 620, at

which time counsel shall be prepared to discuss, among other things, the setting of a trial date

and a schedule for pretrial submissions, as well as what good faith efforts they have made and

will continue to make to settle this case.  To be clear, counsel shall discuss settlement in good

faith prior to that date.

The Clerk is instructed to terminate the motions.  (Docs. ##134, 142 in 22cv1874; Doc.

#63 in 22cv1877).

The Clerk is further instructed to close case no. 22cv1874.

Dated:  September 9, 2025
        White Plains, NY

                                        SO ORDERED:


                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge